UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

KAREN HOOKS and GERALDINE      :
MOORE, et al.,                 :
                               :
              Plaintiffs,      :          11 Civ. 2767 (LAP)
                               :
                               :          OPINION & ORDER
          v.                   :
                               :
FORMAN HOLT ELIADES & RAVIN    :
LLC,                           :
                               :
              Defendant.       :
-------------------------------x

          LORETTA A. PRESKA, Chief United States District Judge:

          Plaintiffs Karen Hooks ("Hooks") and Geraldine Moore

("Moore") (collectively, "Plaintiffs") bring this suit against

Defendant Forman Holt Eliades & Ravin LLC ("Forman Holt" or

"Defendant"), alleging Defendant violated § 1692g(a)(3) of the

Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15

U.S.C. § 1692 et seq.[1]  (First Amended Class Action Complaint,

dated Sept. 15, 2011 [dkt. no. 11] ("FAC") at ¶ 11.)  This claim

arises from a letter notice Defendant sent Plaintiffs on April

5, 2011.  (Letter from Defendants to Plaintiffs, dated Apr. 5,

---

[1] This is the only remaining claim in the litigation.  See Hooks
v. Forman Holt, No. 11 Civ. 2767 (LAP), 2012 WL 3322637
(S.D.N.Y. Aug. 13, 2012), vacated, 717 F.3d 282 (2d Cir. 2013)
(vacating district court's granting Defendants' motion to
dismiss and remanding for further proceedings); see also Notice
of Withdrawal of Class Allegations, dated Oct. 10, 2013 [dkt.
no. 32] (withdrawing all class allegations pleaded in the FAC);
see also Judgment, dated Aug. 15, 2012 [dkt. no. 24].  The Court
refers to its 2012 decision [dkt. no. 23] as "Hooks I" and the
Court of Appeals' 2013 [dkt. no. 26] decision as "Hooks II."

2011, FAC Ex. 1 (the "Notice").  Both parties now move for summary judgment.  For the following reasons, the Court GRANTS IN PART Plaintiffs' motion [dkt. no. 66] and DENIES Defendant's motion [dkt. no. 59].

I.    BACKGROUND

The Court presumes the parties' general familiarity with the facts and procedural history of this case.  However, because the Court has before it cross-motions for summary judgment, a brief review of the background relevant to the present motions is appropriate.  The following facts are drawn from Hooks I, Hooks II, and Plaintiffs'[2] and Defendant's[3] respective submissions and are undisputed except where noted.

---

[2] Pls.' Mem. of Law in Support of Cross Mot. Summ. J. and Opp'n to Def.'s Mot. Summ. J., dated Dec. 12, 2014 [dkt. no. 67] ("Pls.' Mem. and Opp'n"), Ex. 1 ("Pls.' Rule 56.1 Stmt."); Aff. of Karen Hooks, dated Dec. 13, 2014 [dkt. no. 68]; Aff. of Geraldine Moore, dated Dec. 13, 2014 [dkt. no. 69]; Decl. of Novlette R. Kidd, dated Dec. 13, 2014 [dkt. no. 70] ("Kidd Decl."); Pls.' Reply in Support of Cross Mot. for Summ. J., dated Feb. 2, 2015 [dkt. no. 73] ("Pls.' Reply"); Reply Aff. of Novlette R. Kidd, dated Feb. 2, 2015 [dkt. no. 74] ("Kidd Reply Decl.").

[3] Def.'s Mem. of Law in Support of Mot. Summ. J., dated Nov. 14, 2014 [dkt. no. 63] ("Def.'s Mem."), Ex. 1 ("Def.'s Rule 56.1 Stmt."); Decl. of Charles M. Forman, dated Nov. 14, 2014 [dkt. no. 60] ("Forman Decl."); Decl. of William L. Waldman, dated Nov. 14, 2014 [dkt. no. 61] ("Waldman Decl."); Declaration of David H. Weinstein, dated Nov. 14, 2014 [dkt. no. 62]; Def.'s Opp'n to Pls.' Cross Mot. Summ. J. and Reply in Support of Def.'s Mot. Summ. J., dated Jan. 12, 2015 [dkt. no. 71] ("Def.'s Opp'n and Reply"), Ex. 1 ("Def.'s Resp. to Pls.' 56.1 Stmt.").

On December 23, 2009, Plaintiffs purchased a timeshare interest in a resort development in Atlantic City, New Jersey. (Def.'s Rule 56.1 Stmt. ¶ 10.)  See also Hooks I, 2012 WL 3322637, at *1; Hooks II, 717 F.3d at 283-84 (providing additional background regarding Plaintiffs' purchase).  That same day, Plaintiffs executed a mortgage note and mortgage, along with other various documents associated with their real estate purchase.  (Def.'s Rule 56.1 Stmt. ¶¶ 12, 14.) Plaintiffs failed to make the first mortgage payment, due February 6, 2010, or any payment due thereafter.  (Id. ¶ 15.)

On April 5, 2011, Defendant sent Plaintiffs the Notice, which reads in part:

> UNLESS YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE DEBT, OR ANY PART OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID.  IF YOU DO NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU.  ALSO UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM WYNDHAM.  **THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(Id. at 3.)  Subsequently, Plaintiffs' counsel sent a letter to Defendant requesting that the firm provide a deed in lieu of foreclosure to be executed by Plaintiffs.  (Letter from Concetta Puglisi, Esq., dated Apr. 19, 2011, Waldman Decl. Ex. E.) Although the parties disagree on the exact date Plaintiffs

received that letter (see Def.'s Rule 56.1 Stmt. ¶ 22; Pls.'
Rule 56.1 Stmt. ¶ 22), there is no dispute that Defendant sent
the deed in lieu of foreclosure to Plaintiffs' counsel and that,
thereafter, Plaintiffs executed and delivered to Defendant a
deed in lieu of foreclosure conveying the property at issue back
to Wyndham Vacation Resorts, Inc. ("Wyndham"). (Def.'s Rule
56.1 Stmt. ¶ 23.)  The Notice is the only communication
Defendant ever sent directly to either Hooks or Moore. (Id.
¶ 24.)

     While the content of the communications between
Defendant and Plaintiffs is not in dispute, the parties offer
divergent narratives regarding the nature and purpose of those
communications.  For its part, Defendant maintains that it was
retained by Wyndham for the limited purpose of performing
mortgage foreclosure services with respect to timeshare
properties, like that purchased by Plaintiffs, and that
Defendant's representation of Wyndham did not extend to debt
collection.  (Id. ¶¶ 6-9, 16, 20, 27.)  In keeping with that
characterization of its representation, Defendant claims its
communications with Plaintiffs, including sending the Notice,
were for the express purpose of complying with mortgage
foreclosure requirements under the New Jersey Fair Foreclosure
Act, 2A N.J.S.A. § 50:56 ("N.J. Fair Foreclosure Act"). (Id.
¶¶ 17-18, 20-21.)  Accordingly, Defendant maintains it was not a

4

debt collector within the meaning of the FDCPA and, moreover, is a law firm that concentrates its practice principally in commercial bankruptcy and business law matters, and that any debt collection was incidental to its principal practices. (Id. ¶¶ 25-36.)

Plaintiffs refute each of Defendant's statements described in the paragraph above. Specifically, Plaintiffs deny Defendants' statements insofar as Defendant claims that: its representation of Wyndham did not involve debt collection (see Pls.' Rule 56.1 Stmt. ¶¶ 6-9, 16, 20, 27); its communications with Plaintiff were solely to comply with the New Jersey Fair Foreclosure Act (id. ¶¶ 17-18, 20-21); and that Defendant was not a debt collector within the meaning of the FDCPA (id. ¶¶ 25-36). Plaintiffs deny Defendant's statements on the grounds that they lack evidentiary support in the record, are conclusory and supported by declarations that inappropriately testify as to conclusions of law, or both.

Having reached an impasse regarding the characterization of both facts and law in this case, the parties bring the present cross-motions for summary judgement.

II.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This "burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 325).

When the moving party has met this initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Davis v. State of New York, 316 F.3d 93, 100 (2d Cir. 2002). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." Gottlieb v.

Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (citation
omitted).  "[C]onclusory statements, conjecture or speculation
by the party resisting the motion will not defeat summary
judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.
1996) (citations omitted).

          In resolving a motion for summary judgment, courts
must "view the evidence in the light most favorable to the non-
moving party, and may grant summary judgment only when no
reasonable trier of fact could find in favor of the non-moving
party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).
Accordingly, in this context, the court must resolve all
ambiguities and draw all reasonable inferences in the non-
movant's favor.  See Vermont Teddy Bear Co., Inc. v. 1-800
Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Where, as here,
a court is considering multiple motions for summary judgment,
each party's motion must be "evaluated on its own merits, taking
care in each instance to draw all reasonable inferences against
the party whose motion is under consideration." Byrne v.
Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (internal citation
omitted).

III. DISCUSSION

A. Plaintiffs' Request to Strike Certain Declarations
   Offered by Defendant

In 2010, subdivision (c) was added to Rule 56.  See
Fed. R. Civ. P. 56, advisory committee's note.  Subdivision (c)
provides that, on a motion for summary judgment, "[a] party may
object that the material cited to support or dispute a fact
cannot be presented in a form that would be admissible in
evidence."  Fed. R. Civ. P. 56(c).  "The objection functions
much as an objection at trial, adjusted for the pretrial setting
...," and, accordingly, "there is no need to make a separate
motion to strike."  Id., advisory committee's note.  In other
words, the Rule 56 standard makes a motion to strike obsolete in
the summary judgment context.  The Court will take into
consideration the admissibility of evidence in the normal course
of resolving such a motion.  See Fed. R. Civ. P. 56(c)(4);
Faulkner v. Arista Records LLC, 797 F.Supp.2d 299, 305 (S.D.N.Y.
2011) (noting that the principles governing admissibility of
evidence do not change on a motion for summary judgment).

Nevertheless, before evaluating the admissible
evidence, it is appropriate—and perhaps provides some clarity—
first to address Plaintiffs' requests to remove from
consideration certain of Defendant's evidence.  See Faulkner,
797 F.Supp.2d at 305 (quoting Century Pacific, Inc. v. Hilton

8

Hotels Corp., 528 F.Supp.2d 206, 213 (S.D.N.Y. 2007)).
Plaintiffs ask the Court, pursuant to Rule 37, to strike certain
portions of the Forman Declaration and the Waldman Declaration,
each offered by Defendant in support of its motion for summary
judgment. (See Pls.' Mem. and Opp'n at 19-21.)

Where a party does not meet its discovery obligations,
"[a] district court has wide discretion to impose sanctions,
including severe sanctions, under [Rule 37]." 523 IP LLC v.
CureMD.Com, 48 F.Supp.3d 600, 634 (S.D.N.Y. 2014) (quoting
Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir.
2006)). Pursuant to Rule 37(c)(1), if a party fails to provide
information required by Rule 26(a) or (e), the party generally
is not permitted to use that information at trial "unless the
failure was substantially justified or is harmless." 523 IP
LLC, 48 F.Supp. at 634; Fed. R. Civ. P. 37(c)(1). The intention
of this preclusionary measure is to prevent the practice of
"sandbagging" an opposing party with new evidence, and it
applies on motions for summary judgment. See, e.g., Fleming v.
Verizon N.Y., Inc., No. 03 Civ. 5639 (WHP), 2006 WL 2709766, at
*7 (S.D.N.Y. Sept. 22, 2006) (citation omitted). Although the
Court of Appeals has held that courts have "wide discretion"
under Rule 37, see Design Strategy, 469 F.3d at 294, courts in
this Circuit recognize that preclusion of evidence pursuant to
Rule 37(c)(1) should be exercised with caution. Fleming, 2006

WL 2709766, at *7 (citing Ventra v. United States, 121 F.Supp.2d
326, 332 (S.D.N.Y. 2000)).

In determining whether to exclude evidence under this
standard, a district court considers a nonexclusive list of four
factors: (1) the party's explanation for its failure to
disclose, (2) the importance of the evidence, (3) the prejudice
suffered by the opposing party, and (4) the possibility of a
continuance. Design Strategy, 469 F.3d at 296. "The party that
violates Rule 26 bears the burden of showing that its violation
was either substantially justified or harmless." 523 IP LLC, 48
F.Supp.3d at 634-35 (citations omitted).

### 1. Forman Declaration

First, Plaintiffs ask that the Court, pursuant to Rule
37, strike Paragraphs 7-9 and 11-17 of the Forman Declaration[4]

---

[4]    7.    When the Foreclosure Notice was sent in April 2011,
Forman Holt was not a debt collector within the meaning of the
Fair Debt Collection Practices Act, 15 U.S.C. § 1692a et seq.
("FDCPA") and did not intend to collect any debt from
Plaintiffs.

8.    Forman Holt is, and was when the Foreclosure Notice
was sent in April 2011, a law firm that concentrates its
practice principally in commercial bankruptcy and business law
matters. The Firm's largest area of practice is, and was in
April 2011, the representation of trustees and other fiduciaries
in bankruptcy proceedings.

9.    When the Foreclosure Notice was sent in April 2011,
the principal purpose of the firm was not, and had never been,
to collect debt as defined in the FDCPA, 15 U.S.C. § 1692a(5),
which I hereafter refer to as "consumer debt."

(Pls.' Mem. and Opp'n at 19-20).  Plaintiffs argue that these
paragraphs are "patently conclusory in their allegations,
thereby invading the province of the fact finder..." and that
"Defendant is incompetent to testify to legal conclusions."
(Id.)  In response, Defendants argue that Paragraphs 7-9 address
the "principal purpose" prong of the definition of debt

---------------------------

     11.  In or before April 2011, the Firm had on occasion
collected debt not as incidental to a bona fide fiduciary
obligation, but these activities had, almost without exception,
involved the collection of commercial (i.e., business) debt, not
consumer debt.

     12.  Accordingly, in April 2011, the Firm was not, and had
never been, engaged in regularly colleting or attempting to
collect, directly or indirectly, consumer debt (which I
hereafter refer to as "consumer debt collection activity").

     13.  In this regard, Forman Holt records show that, during
the one-year period ending April 5, 2011 (the date of the
Foreclosure Notice), any consumer debt collection activity by
the Firm was incidental to a bona fide fiduciary obligation and
was thus excluded from consumer debt collection activity as
provided in FDCPA § 1692a(6)(F)(i).

     14.  During the one-year period ending April 5, 2011,
Forman Holt had no personnel specifically assigned to work on
non-fiduciary consumer debt collection activity.

     15.  During the one-year period ending April 5, 2011,
Forman Holt had not system or contractors in place to facilitate
non-fiduciary consumer debt collection activity.

     16.  During the one-year period ending April 5, 2011,
Forman Holt had no client that had retained the Firm to assist
or engage in non-fiduciary consumer debt collection activity.

     17.  Forman Holt received no revenue related to non-
fiduciary consumer debt collection activity for the one-year
period ending April 5, 2011.

collector within the FDCPA and Paragraphs 11-17 do the same with respect to the "regularly collects" prong.  (Def.'s Opp'n and Reply at 6-10.)

The Court agrees with Plaintiffs that portions of the Forman Declaration are inadmissible, but not on the grounds of Rule 37.  Rather, the Court's conclusion is based on the fact that certain of the Forman Declaration are conclusory and "usurp the fact-finding function of the jury." 523 IP LLC, 48 F.Supp.3d at 635 (citing United States v. Garcia, 413 F.3d 201, 210-11 (2d Cir. 2005)).  Accordingly, Plaintiffs' request as to Paragraphs 7, 9, 11-13, and 17 is GRANTED, and those paragraphs are hereby STRICKEN from the record.

As Defendant freely admits, Paragraphs 7-9 address the "principal purpose" prong of the definition of debt collector within the FDCPA, and Paragraphs 11-17 do the same for the "regularly collects" prong.  (See Def.'s Opp'n and Reply at 6-10.)  Reflecting that, the Forman Declaration repeatedly couches its statements in terms of the applicable law, therefore causing these declarations to function as inadmissible conclusory and/or legal statements.  Paragraphs 7 and 9 state that Defendant "was not a debt collector within the meaning of the [FDCPA]" (Forman Decl. ¶ 7) and, further, that its "principal purpose ... was not, and had never been, to collect debt as defined in the

12

FDCPA" (id. ¶ 9).   Paragraphs 11, 12, 13, and 17 assert similar legal conclusions, stating, in effect, that Defendant's debt collection activities were incidental to a bona fide fiduciary obligation and therefore exempt from the FDCPA under § 1692a(6)(F)(i).   The entire purpose of this exercise is for the Court to address whether (1) the Notice constituted debt collection and (2) Defendant is a "debt collector" within the meaning of the FDCPA.   It follows that these legal issues cannot be proven by Defendant's declaration—if that were the case, this Order & Opinion would be unnecessary.

     With respect to the remaining challenged portions, the Court OVERRULES Plaintiffs' objection to Paragraphs 8 and 14-16. However, the Court notes that these statements are largely uncorroborated by any evidence beyond Forman's "personal knowledge, including ... a review" of Defendant's records and records provided by Wyndham.   (Forman Decl. ¶ 3.)   Moreover, portions of these statements are flatly contradicted by Plaintiffs' evidence.   For example, Defendant simply declares there were no personnel specifically assigned to work on non-fiduciary debt collection, no system to facilitate this activity, and no client that retained Defendant to engage in such collection.   (Forman Decl. ¶ 14-16.)   Putting aside Defendant's legal conclusion it was not engaging in non-fiduciary debt collection, Plaintiff has offered conflicting

13

evidence regarding personnel and pattern, discussed below.  (See
infra III.C.2.i.)  Further, as discussed with respect to the
Waldman Declaration, Defendant has failed to produce its
retainer agreement with Wyndham—despite repeated requests by
Plaintiff—and cannot simultaneously credibly testify as to the
nature of that relationship.  Accordingly, the Court need not
strike these challenged, remaining paragraphs of the Forman
Declaration but accords them weight in its summary judgment
determination consistent with the characterization of those
declarations discussed above.

    In sum, Paragraphs 7, 9, 11-13, and 17 of the Forman
Declaration are hereby STRICKEN as conclusory factual statements
and/or inadmissible legal conclusions.  Paragraphs 8 and 14-16
remain on the record, but are afforded little weight given their
conclusory nature and underlying legal assertions, along with
more persuasive countervailing evidence offered by Plaintiffs.
The Forman Declaration reflects statements framed according to
the relevant FDCPA language and case law, but simply stating
those apply in a certain way does not make it so.

### 2. Waldman Declaration

    Second, Plaintiffs ask that the Court, pursuant to
Rule 37(c), strike Paragraphs 6-9, 16, 17, and 20 of the Waldman

Declaration.[5]   (Pls.' Mem. and Opp'n at 20-21.)   In general,

those paragraphs reference Defendant's retainer agreement with

Wyndham, namely, that Wyndham retained Defendant for the limited

purpose of providing foreclosure services with respect to

timeshare properties and representing Wyndham in connection with

---

[5]   6.   When the Foreclosure Notice was sent to Plaintiffs and
at all times previously, the scope of WVR's retention of the
Firm was limited to providing mortgage foreclosure services with
respect to timeshare properties and representing WVR in
connection with bankruptcy proceedings.

7.   WVR has never retained the Firm to collect debts owed
to WVR by consumers, including debts that may have been owed by
the owners of the timeshare properties under mortgage
foreclosure by the Firm.

8.   The Firm has never collected or attempted to collect
any consumer debts that may have been owed to WVR, including
debts that may have been owed by the owners of the timeshare
properties under mortgage foreclosure by the Firm.

9.   WVR's engagement of the Firm with respect to
Plaintiffs was limited to mortgage foreclosure and did not
extend to collecting any debt form the Plaintiffs, by judgment
or otherwise.

16.   In late March 2011, WVR retained Forman Holt to
foreclose on Plaintiffs' Mortgage.

17.   In New Jersey, mortgage foreclosure constitutes
enforcement of a security interest in the form of a real
property lien.

20.   The Firm's purpose in sending the Foreclosure Notice
to Plaintiffs was to fulfill a requirement of New Jersey's Fair
Foreclosure Act, 2A N.J.S.A. § 50:56, in the process of
foreclosure on Plaintiffs' Mortgage.   The Firm's purpose in
sending the Foreclosure Notice was not to collect a debt, since
the Firm had not been retained by WVR to collect any debt.

bankruptcy proceedings, and that Wyndham has never retained Defendant to collect consumer debt. (Id.) Plaintiffs argue these paragraphs,[6] and others that refer to any retainer agreement between Defendant and Wyndham, should be stricken because "the retainer agreement between Defendant and Wyndham was repeatedly requested by Plaintiffs during discovery and Defendant refused to produce it and did not produce it." (Pls.' Mem. and Opp'n at 20.) Defendant maintains Rule 37(c) is inapplicable here and, moreover, that Plaintiffs are precluded from raising it, as they never sought a court order overruling Defendant's objection and compelling production of the retainer agreement. (Def.'s Reply and Opp'n at 4-5.)

As compared to Plaintiffs' motion to strike portions of the Forman Declaration, this request falls more squarely into the discovery rules. Indeed, Plaintiffs are correct that, if Defendant did not properly disclose evidence during discovery, Rule 37 is a "self executing ... automatic sanction," which requires preclusion of that evidence. See Zahler v. Twin City Fire Ins. Co., No. 04 CV 10299 (LAP), 2007 WL 4563417, at *1-2 (S.D.N.Y. Dec. 21, 2007). The question is whether Defendant

---

[6] With the exception of Paragraph 17, which Plaintiffs seek to strike because "it is conclusory and impermissibly usurps the function of the fact finder." (Pls.' Mem. and Opp'n at 21.)

actually violated the discovery rules by failing to produce its retainer agreement with Wyndham.

Plaintiff claims it has made "repeated requests" that Defendant produce any retainer agreements between Defendant and Wyndham. (Pls.' Mem. and Opp'n at 21.) The Court counts three such requests: (1) Plaintiffs' interrogatories (Kidd Decl. Ex. 9) and (2) request for production of documents (id. Ex. 12), and (3) their subsequent follow-up letter request regarding the first two items (Kidd Reply Decl. Exs. 17, 18.). In the first instance, Defendant's replies to Plaintiffs' interrogatories and production requests, Defendant objected on the grounds that such information is "neither relevant to any party's claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence," that "the interrogatory is ambiguous as to the meaning of 'agreements' to the extent such term differs from 'contracts'," and that "[i]t is irrelevant to [P]laintiffs' claims what tasks [D]efendant [was] hired to perform." (See Kidd Decl. Ex. 9 at ¶¶ 14, 15, Ex. 12 at ¶ 4; Kidd Reply Decl. Ex. 17 at "Interrogatories" Nos. 14, 15, "Production of Document Requests" at No. 4; Ex. 18 at "Interrogatories" at Nos. 14, 15, "Document Requests" at No.4.)

Defendant's objections are at odds with the facts Defendant itself seeks to establish by offering the Waldman

Declaration. Defendant cannot, on the one hand, refuse to produce the retainer agreement because it is "not relevant to any parties' claims or defenses" and, further, irrelevant to Plaintiffs' claims about the tasks Wyndham hired Defendant to do and on the other, assert facts characterizing Wyndham's retention of Defendant. The present motions hinge on whether Defendant was a debt collector within the meaning of the FDCPA, and as proof that is not the case, Defendant specifically represents facts regarding its representation of Wyndham.

That assertion is information Defendant is using "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Defendant has not borne its burden of showing that its violation of Rule 26(a) was either "justified or harmless." See 523 IP LLC, 48 F.Supp.3d at 634-35. Accordingly, the Court finds that Defendant violated Rule 26(a)'s initial disclosure requirement and subdivision (e)'s corresponding requirement to supplement or correct its disclosure. This violation falls squarely within Rule 37(c). And under the Rule 37(c) "factors" set forth by the Court of Appeals, see Design Strategy, 469 F.3d at 296, the Court finds Defendant's explanation for its failure to disclose any retention agreement insufficient; that the nature of Wyndham's retention of Defendant is central to the case; and that Plaintiffs have been prejudiced by Defendant's non-production of

18

any retention agreement coupled with the Waldman Declaration's testimony as to its contents.

The Court is therefore required to, and does, invoke Rule 37(c)'s "self executing" requirement, Zahler, 2007 WL 4563417 at *1-2, and hereby STRIKES Waldman Declaration Paragraphs 6-9, 16, and 20.  The Court also STRIKES Paragraph 17 as an inadmissible legal conclusion.  In doing so, as with respect to the Forman Declaration, the Court notes that ruling on Plaintiffs' motion to strike simply clarifies the Court's analysis of Defendant's evidence offered in support of its motion for summary judgment as required by Rule 56.  See Fed. R. Civ. P. 56(c)(4); Faulkner v. Arista Records LLC, 797 F.Supp.2d 299, 305 (S.D.N.Y. 2011).

B. Applicable FDCPA Law

"[A] defendant can only be held liable for violating the FDCPA if he is a 'debt collector' within the meaning of the Act." Feldman v. Sanders Legal Grp., 914 F.Supp.2d 595, 599 (S.D.N.Y. 2012) (citing Daros v. Chase Manhattan Bank, 19 Fed.App'x. 26, 27 (2d Cir. 2001)); see also 15 U.S.C. §§ 1692b, 1692c, 1692d, 1692e (addressing activities of "debt collectors"). Subject to certain exceptions, the FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); see also Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Berlotti, 374 F.3d 56, 60-63 (2d Cir. 2004) (interpreting the statutory definition).

The present case involves the "regularity" prong.[7] The Court of Appeals has held that "the question of whether a lawyer or law firm 'regularly' engages in debt collection activity within the meaning of [1692a(6)] ... must be assessed on a case-by-case basis in light of the factors bearing on the issue of regularity." Goldstein, 374 F.3d at 62. None of the factors

---

[7] Plaintiffs do not allege that Defendant qualifies as a "debt collector" under the "principal purpose" prong.

cited by the Court of Appeals is alone dispositive, and the list is illustrative rather than exclusive.  Id.  Those factors include:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

Id. at 62-63.  The Court of Appeals also noted that facts relating to the role debt collection work plays in the practice as a whole should be considered to the extent they bear on regularity, as may whether the law practice seeks debt collection business by marketing itself as having debt collection expertise.  Id. at 63.

Although there are limits on the debts and entities subject to the FDCPA—such as, here, being a "regular" debt collector within the meaning of the Act—once subject to the Act, it is a strict liability statute.  See, e.g., Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).  Further, a single violation of the FDCPA is sufficient to establish civil liability.  See Bentley v. Great Lakes Collection Bureau, 6 F.3d

60, 62 (2d Cir. 1993).  Relevant here, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act."  Jacobson v. Healthcare Fin. Serv. Inc., 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k).  The requirements for communications are set forth by 15 U.S.C. § 1692g(a)(3), which is, of course, the basis for Plaintiffs' sole remaining claim in this action.

As a seeming counterweight to the Act's strict liability, "[t]he plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status."  Goldstein, 374 F.3d at 60.  In the event plaintiff proves a violation under the FDCPA, defendant is liable for damages pursuant to 15 U.S.C. § 1692k.

C. Cross-Motions for Summary Judgment

In order to prevail on their claim that Defendant violated 15 U.S.C. § 1692g(a)(3), Plaintiffs must show that: (1) they are consumers as defined by the FDCPA; (2) the debt in connection with which Defendant sent the Notice is a debt as defined by the FDCPA; (3) Defendant is a debt collector as defined by the FDCPA; and (4) Defendant's disclosure in its communications with Plaintiffs violated § 1692g(a)(3).  Only the third element remains in dispute.[8]

In this FDCPA action, the burden rests on Plaintiffs to come forward with evidence sufficient to demonstrate that Defendant is a debt collector.  See Goldstein, 374 F.3d at 60. Defendant argues that Plaintiffs have failed to sustain their burden on that score because (1) the Notice was not intended to collect a consumer debt and (2) Defendant was not a collector of

_____

[8] By element: (1) "[Defendant] does not contest that Plaintiffs have produced evidence that they are consumers within the meaning of the FDCP ...."  (Def.'s Reply and Opp'n at 16 n.14; see also Def.'s Resp. to Pls.' Rule 56.1 Stmt. ¶¶ 42, 43.); (2) "[Defendant] does not contest that Plaintiffs have produced evidence that ... the loan [Plaintiffs] secured by the mortgage in this case was consumer debt."  (Def.'s Resp. to Pls.' Rule 56.1 Stmt. ¶ 52.); and (4) See Hooks II, 717 F.3d at 286 (concluding that 15 U.S.C. § 1692g(a)(3) does not impose a writing requirement and therefore finding the Notice's requirement that "UNLESS YOU NOTIFY US IN WRITING WITHIN (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE DEBT, OR ANY PART OF IT, IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID" does not comply with 15 U.S.C. § 1692g(a)(3)).

consumer debt within the scope of the FDCPA.  (See Def.'s Opp'n
and Reply at 1.)  Plaintiffs' cross-motion for summary judgment
contends the opposite on both issues.  Accordingly, the Court
considers the cross-motions and their dispositive issues
together.

### 1. Defendant's Notice Was a Debt Collection within the Meaning of the FDCPA

The threshold question is whether the Notice was a
"communication ... in connection with the collection" of a debt.
15 U.S.C. § 1692g(a).  If the Notice does not fit within that
definition, whether Defendant "principally" or "regularly"
engaged in such practices is of no consequence.  Defendant
asserts that the purpose of the Notice was mortgage foreclosure,
which constitutes enforcement of a real property interest and is
accordingly not debt collection under the FDCPA; further,
Defendant argues it sent the Notice solely to fulfill a required
step in the process of foreclosing on Plaintiffs' mortgage
pursuant to New Jersey's Fair Foreclosure Act.  (See Def.'s Mem.
at 13-18; Def.'s Opp'n and Reply at 19-22.)  For the following
reasons, the Court rejects Defendant's arguments and finds that
the Notice constituted a communication to collect a consumer
debt under the FDCPA.

The FDCPA defines "communication" to mean "the
conveying of information regarding a debt directly or indirectly

24

to any person through any medium." 15 U.S.C. § 1692a(2).
However, the Act does not define what it means to "collect" or
"attempt to collect" a debt. See 15 U.S.C. § 1692; see also
Lipscomb v. The Raddatz Law Firm, P.L.L.C., ---F.Supp.3d---,
2015 WL 3798140, at *5 (D.D.C. June 18, 2015). However, the
Supreme Court has stated that "a lawyer who regularly tries to
obtain payment of consumer debts through legal proceedings is a
lawyer who regularly 'attempts' to 'collect' those consumer
debts." Heintz v. Jenkins, 514 U.S. 291, 294 (citing Black's
Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim
is to obtain payment or liquidation of it, either by personal
solicitation or legal proceedings.")). Along similar lines as
Heintz, and the Black's Law Dictionary definition on which it
relies, the Court of Appeals has construed collection of debt
under the FDCPA to mean "gather[] money on behalf of [a]
creditor." Vincent v. The Money Store, 736 F.3d 88, 100 (2d
Cir. 2013) (interpreting meaning of "collection").

   The Notice aimed, at least in part, to collect money
from Plaintiffs. For example, the letter provides that
Plaintiffs' default may be cured by paying "the amount of
$4,453.46 plus the per diem interest of $9.822 for each day ...
until full payment is received by Wyndham." (Notice at 2.)
Indeed, the Notice makes repeated references to the default and
Plaintiffs' ability to cure the default by payment. Perhaps

none more direct than the bold-faced statement: "**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" (Id. at 3.)  Even assuming arguendo that Defendant intended the Notice to communicate the possibility of foreclosure proceedings under New Jersey law, it also sought to induce Plaintiffs to pay money to cure their debt, provide predicate notice for a later court action in the event the debt was not paid, and provide a mechanism for Plaintiffs to surrender the property to avoid payment and/or court action.

The Court of Appeals confronted a similar set of facts in Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998).  In Romea, the court held that an eviction notice could give rise to an FDCPA violation.  Id. at 111.  Although the court acknowledged that sending the notice in question was a statutory condition precedent, under Article 7 of the New York Real Property Actions and Proceedings Law ("Article 7"), to commencing a summary eviction proceeding that is possessory in nature, that did "not mean that the notice is mutually exclusive with debt collection."  Id. at 116.  Indeed, the court found that the facts surrounding an Article 7 summary proceeding "prove nothing about whether the notice ... was or was not a 'communication' sent 'in connection with the collection of any debt'," 15 U.S.C. § 1692e (1994).  Under the plain language of

the FDCPA, the Supreme Court's interpretation in <u>Heintz</u>, and the
Court of Appeals' analysis in <u>Romea</u>, it follows that the Notice
here was a "communication" as defined by the FDCPA in that it
conveyed "information regarding a debt" to another person, 15
U.S.C. § 1692(a)(2).  Accordingly, as in <u>Romea</u>, the Court finds
that whether the Notice also intended to serve as a prerequisite
under New Jersey's Fair Foreclosure Act is "wholly irrelevant to
the requirements and applicability of the FDCPA." <u>Romea</u>, 163
F.3d at 116; <u>see also</u> <u>Lipscomb</u>, 2015 WL 3798140, at *5-6
(applying <u>Romea</u> similarly).

        Defendant's attempts to distinguish <u>Romea</u> are
unavailing.  Defendant's counterargument is premised on what it
asserts is a distinction between <u>in rem</u> and <u>in personam</u>
proceedings in New Jersey, equating the former with a matter
involving real property and the latter with debt collection.
(<u>See</u> Def.'s Mem. at 13-17.)  Put differently, Defendant argues
there is analytical space between real property foreclosure,
which does not fall within the FDCPA, and a suit to recover
debt, which does.  In support of this argument, Defendant relies
on district court decisions from this Circuit holding that "the
enforcement of a security interest through foreclosure
proceedings that do not seek monetary judgments against debtors
is not debt collection for purposes of the FDCPA." <u>Boyd v. J.E.</u>
<u>Robert Co.</u>, No. 05-CV-2455, 2013 WL 5436969, at *9 (E.D.N.Y.

27

Sept. 27, 2013), aff'd, 765 F.3d 123 (2d Cir. 2014); see also
Derisme v. Hunt Leibert Jacobson P.C., 880 F.Supp.2d 311, 325
(D.Conn. 2012) ("[F]oreclosing on a mortgage does not qualify as
debt collection activity for purposes of the FDCPA.").  Indeed,
Defendant is correct that "[t]he view adopted by a majority of
district courts ... is that mortgage foreclosure is not debt
collection." Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 460
(6th Cir. 2013); see also Derisme, 880 F.Supp. at 325 ("Although
there is a split of authority on this issue, it appears that a
majority of courts who have addressed this question have also
concluded that foreclosing on a mortgage does not qualify as
debt collection activity for purposes of the FDCPA."); Carlin v.
Davidson Fink LLP, No. 13-CV-6062, 2014 WL 4826248, at *9 n.7
(E.D.N.Y. Sept. 23, 2014) (citing additional cases for the
proposition that the majority of district courts concur on this
issue).

          The key, however, as noted by the district court in
Carlin, 2014 WL 4826248, at *6, is whether Defendant can pursue
a foreclosure action and also engage in debt collection under
the FDCPA.  A corollary to the Court of Appeals' statement in
Romea that a statutorily-mandated eviction notice was not
"mutually exclusive with debt collection," Romea, 163 F.3d at
116, is the common-sense recognition by the Court of Appeals for
the Eleventh Circuit that "[a] communication related to debt

                               28

collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012); see also Romea, 163 F.3d at 117.

Here, Defendant clearly communicated more than potential mortgage foreclosure proceedings.  Even assuming that the sole reason Defendant sent the Notice was to comply with the New Jersey Fair Foreclosure Act, (see Def.'s Rule 56.1 Stmt. ¶ 19; Waldman Decl. ¶ 19), a central purpose of that law is to provide plaintiffs an opportunity to satisfy a debt to avoid a possible foreclosure suit, see N.J.S.A. 2A:50-56.  In other words, the New Jersey Fair Foreclosure Act itself intends to obtain payment by solicitation in lieu of a proceeding.  Indeed, the heading of the Notice itself confirms the Court's view that, although one purpose of the letter was mortgage foreclosure and such enforcement of a security interest is not subject to the FDCPA, the Notice sought to accomplish debt collection as well. Directly above the language regarding foreclosure, the Notice reads: "**NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT.**"  (Notice at 1.)  The Court need not read between the lines for purposes other than mortgage foreclosure—the other purpose is on the first line, in bold.

Accordingly, the Court finds that the Notice constituted a debt collection within the meaning of the FDCPA.[9]

## 2. Plaintiffs Have Established that Defendant is a "Debt Collector" within the FDCPA

### i.  Plaintiffs Have Met Their Burden under "Goldstein"

Having found that Defendant's sending the Notice was a "communication" sent "in connection with the collection of [a] debt," the Court now turns to whether Defendant is a "debt collector" within the meaning of the FDCPA.  Here, that inquiry turns on whether Defendant "regularly" engaged in debt collection activities—keeping in mind that the Court views Defendant's sending the Notice as such an activity.

Plaintiffs provide a variety of evidence which they argue demonstrates that Defendant is a debt collector within the meaning of the FDCPA.  That evidence falls into two broad categories: (1) Defendant's putative admissions in its Answer (Answer, dated Sept. 10, 2013 [dkt. no. 29] ("Answer")), the Notice, various court submissions, and Defendant's website (Pls.' Mem. and Opp'n at 10-14); and (2) statistics regarding

---

[9] The Court of Appeals has not addressed the specific issue of whether mortgage foreclosure constitutes debt collection under the FDCPA, see Boyd, 765 F.3d at 127 n.3 (declining to address the district court's conclusion that the FDCPA does not apply to enforcement of security interests against property), and the Court need not reach that question here.

validation notices—like the Notice at issue—sent by Defendant
between July 2010 and April 2011, along with similar data and
analysis regarding foreclose complaints filed by Defendant on
behalf of Wyndham (Pls.' Mem. and Opp'n at 14-17).

The Court finds that Plaintiffs' second category of
information demonstrates facts sufficient that a reasonable jury
would conclude that Defendant "regularly" collects debt under
the FDCPA.  In response to Plaintiffs' Interrogatories,
Defendant stated that, between July 2010 and April 2011, it sent
approximately 3,013 letters containing a validation notice
similar to the Notice at issue.[10]   (Kidd Decl. Ex. 9 at ¶ 4.)
Moreover, each of these notices was sent on behalf of Wyndham.
(Id. ¶¶ 6-7).  Defendant began "performing New Jersey timeshare
foreclosure services" for Wyndham "in or about July 2010," which
is within the timeframe Defendant began using the form notice
similar to the Notice at issue.  (Id. at ¶¶ 11, 19.)  Along with
its collection activities for Wyndham in sending validation
notices, between July 2010 and April 2011, Defendant also filed
160 foreclosure complaints on behalf of Wyndham.  (Id. at ¶¶ 11,
23.)  Based on an examination of those filings, Plaintiffs
estimate that these complaints amount to a total of 2,560

---

[10] Similarly, from April 5, 2011 through September 10, 2013—the
date Defendant filed its Answer—Defendant sent 342 notices
similar to the Notice at issue.  (Kidd Decl. Ex. 9 at ¶ 5.)

different consumers sued by Defendant on behalf of Wyndham.
(Pls.' Mem. and Opp'n at 15-16.)  Plaintiffs supplement this
statistical information with various other contextual evidence.
For example, Plaintiffs combine Defendant's statement that Ms.
Clara Perez is the "officer or agent of Wyndham who referred
[P]laintiffs' matter to corporate defendant in late March 2011"
(Kidd Decl. Ex. 9 at ¶ 16), with the certification on one
foreclosure complaint filed by Defendant (see Kidd Decl. Ex.
10), to provide a rather convincing narrative of the pattern by
which Wyndham (through Perez) and Defendant engaged in debt
collection activities.  (See Pls.' Mem. and Opp'n at 16-17.)

     Although Defendant's putative admissions are not
necessary to the Court's conclusion, viewed alongside the
statistical evidence, that information provides context for
Plaintiffs' argument.  Defendant's admission that it "uses the
mail and litigation to collect defaulted consumer debt owed or
due or alleged to be owed or due to others," (FAC ¶ 3; Answer
¶ 3), advertisements on Defendant's website regarding its
foreclosures and "collections and timeshares practices," and
particularly Mr. Waldman's expertise in those areas, further
support Plaintiffs' arguments and supplement their proffered
statistical evidence.  (See Kidd Decl. Ex. 7, 8; Pls.' Mem. and
Opp'n at 13-14.)  Plaintiffs also claim, citing Alibrandi v.
Fin. Outsourcing Svs., Inc., 333 F.3d 82 (2d Cir. 2003) (per

curiam), that Defendant's self-identification as a debt
collector in the Notice precludes its present claim to the
contrary. (Pls.' Mem. and Opp'n at 11-12.) Although Alibrandi
did not hold that "the mere use of a 'debt collector' disclaimer
automatically transforms a person into a debt collector for
purposes of the FDCPA," it does direct the court to consider the
disclaimer in the totality of facts of each particular case.
See Kapsis v. Am. Home Mortgage Servicing Inc., 923 F. Supp.2d
430, 441 (E.D.N.Y. 2013). Doing so here supports Plaintiffs'
assertion that Defendant was engaged in debt collection.
Finally, Plaintiffs note that Defendant has repeatedly claimed
full compliance with the FDCPA—something that would not be
necessary if Defendant were not subject to the Act.

        In its own summary judgment motion, Defendant does not
offer much in the way of rebuttal. Rather, as discussed above
(see supra III.A), Defendant relies on the largely conclusory,
uncorroborated Forman and Waldman Declarations. For example,
Defendant cites the Forman Declaration—including now-stricken
Paragraphs 12 and 13—as "uncontroverted evidence" that its
consumer collection activities were "incidental to a bona fide
fiduciary obligation" and therefore excluded from debt
collection activity under the FDCPA. (Def.'s Mem. at 10-11.)
Defendant offers no evidence to support this conclusion beyond
unproduced "records." While Forman Declaration and Waldman

Declaration clearly reflect § 1692g(a) and the <u>Goldstein</u> factors—certain paragraphs are bare legal denials of activities associated with debt collectors—Defendant offers no evidence to support those statements.  There are no statistics regarding its foreclosure activities, what percentage those comprise of its overall revenue (if any), the frequency of those activities, or even the nature of its relationship with Wyndham.  Left with only circular, self-referencing factual and legal conclusions, Defendant is unable to defeat Plaintiffs' motion for summary judgment on this point.  <u>See</u> <u>Kulak</u>, 88 F.3d at 71 (2d Cir. 1996) (citations omitted).

In sum, Plaintiffs have met their burden under <u>Goldstein</u> and supplied evidence regarding each of its factors: statistics regarding validation notices and foreclosure complaints; Ms. Perez and Mr. Waldman's specific involvement in these matters; and that each debt collection action was taken for Wyndham.  In response, Defendant offers little more than uncorroborated conclusory statements and inadmissible legal conclusions.  Accordingly, even viewed in the light most favorable to Defendant, Plaintiff has provided evidence sufficient to demonstrate there is no genuine issue of material fact to reach a conclusion other than Defendant is a debt collector within the meaning of the FDCPA.

34

ii.   Defendant Does Not Qualify for the
"Fiduciary Obligation" Exception

Regardless of Plaintiffs' evidence, Defendants argue
that "during the one-year period ending April 5, 2011 ... any
consumer debt collection activity by [Defendant] was incidental
to a bona fide fiduciary obligation and was thus excluded from
consumer debt collection activity as provided in FDCPA
§1692a(6)(F)(i)."   (Forman Decl. ¶ 13; Def.'s Mem. at 10-11, 19-
20.)   Again, Defendant's argument—that its collection activities
on behalf of Wyndham were incidental to Defendant's bankruptcy
law practice—is premised on its own now-stricken legal
conclusion in the Forman Declaration.

Few courts have addressed the fiduciary obligation
exception in general, and even fewer have done so in the context
of mortgage foreclosure.   The clearest guidance on this issue
comes from Federal Trade Commission (the "FTC") Staff
Commentary, which provides that a trustee solely to conduct a
foreclosure sale does not fall within this exception.   FTC Staff
Commentary, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n Dec.
13, 1988) ("The exemption (i) for bona fide fiduciary
obligations or escrow agreements applies to entities such as
trust departments of banks, and escrow companies...."). The FTC
Staff Commentary and cases addressing this issue suggest that
the fiduciary exception is not intended for law firms.   Indeed,

35

it is well-established that lawyers can be "debt collectors"
even if conducting litigation.  See Heintz, 514 U.S. at 299
(1995); see also Travieso v. Gutman, Mintz, Baker & Sonnenfeldt,
P.C., 94 CV 5756 (JBW), 1995 WL 704778, at *4 (E.D.N.Y. Nov. 15,
1995) (citing Heintz in finding that a realty company, which had
a weaker fiduciary relationship to the owners of buildings than
the owner's lawyers, was not exempt under the FDCPA).
"Generally speaking, all lawyers are fiduciaries for their
clients ... however, the more important question is whether
[Defendant's] actions were 'incidental' to their fiduciary
obligation."  Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d
373, 378 (4th Cir. 2006).  Here, Defendant's collection
activities appear central to its representation of Wyndham, not
incidental to it.

Again, Defendant's only counterargument is its own
declarations regarding its representation of Wyndham.  Absent
any concrete evidence to the contrary—such as, perhaps, the
retainer agreement Plaintiffs requested—a fair reading of the
record supports the Court's finding, even putting aside the
seeming absence of applications of the fiduciary exception to

law firms.   Accordingly, the Court finds that Defendant is not excepted from the FDCPA under § 1692a(6)(F)(i).[11]

D. <u>Damages</u>

In the event plaintiff proves a violation under the FDCPA, defendant is liable for damages pursuant to 15 U.S.C. § 1692k.   The Act further provides that upon a finding of liability a court may award an individual plaintiff actual damages in compensation for the harm suffered as a result of the violation, "additional damages" not to exceed $1,000, and reasonable costs and attorney's fees.   <u>See</u> 15 U.S.C. § 1692k(a)(1)-(3); <u>see also</u> <u>Clomon v. Jackson</u>, 988 F.2d 1314 (2d Cir. 1993).   Here, Plaintiffs request "additional" damages in the amount of $1,000 each.   Defendant counters that Plaintiffs are not entitled to such damages.

---

[11] Another result of finding that Defendant does not qualify for § 1692a(6)(F)(i)'s exception is to render meaningless its assertion that "[i]n or before April 2011, [Defendant] had on occasion collected debt not as incidental to a bona fide fiduciary obligation, but these activities had, almost without exception, involved the collection of commercial (i.e., business) debt, not consumer debt." (Def.'s Rule 56.1 Stmt. ¶ 29; Forman Decl. ¶ 11.)   Putting aside the Court's earlier conclusion that Defendant may not simply declare that its collection activities were "incidental to a bona fide fiduciary obligation" (<u>see</u> <u>supra</u> III.C.2.ii), the Court's finding that Defendant does not qualify for this exception renders moot any argument it makes regarding the distinction between its commercial and consumer debt collection activities.

The decision whether to award "additional damages," and the amount of any such award, is within the district court's discretion.  See Clomon, 988 F.2d at 1322 (citing Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989)(FDCPA gives district courts "ample discretion" in assessing damages); Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989)(decision to award "additional damages" is "discretionary").  However, the FDCPA provides a non-exclusive list of factors to guide this inquiry, including the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the debt collector's noncompliance was intentional, among others. 15 U.S.C. § 1692k(b).

Considering those factors, the Court finds that additional damages are not appropriate here.  Most important to the Court's analysis is the Court's judgment that Defendant did not know, nor should it have known, that its collection letters violated § 1692g(a)(3).  Indeed, as Defendant correctly points out, in what was then a matter of first impression in this Circuit (see Hooks II, 717 F.3d at 285), this Court initially agreed with Defendant's reading of the statute, finding that the Notice did not violate § 1692g(a)(3)'s writing requirement.  See Hooks I, at 8-11.  The nature of Defendant's noncompliance appears unintentional or, at the least, based upon a good faith,

plain interpretation of the statute.  Moreover, neither Plaintiff suffered serious harm as the result of Defendant's wording of the Notice, which is the basis of the FDCPA violation.  (See Def.'s Rule 56.1 Stmt. ¶¶ 38-40.)

In light of the foregoing, the Court finds that "additional" statutory damages are unwarranted here.

IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' cross-motion for summary judgment [dkt. no. 66], insofar as it finds (1) the Notice constituted an attempt to collect debt within the meaning of the FDCPA and (2) Defendant is a debt collector as defined by the Act.  However, the Court finds that Plaintiffs are not entitled to "additional" damages. Accordingly, Defendant's corresponding motion for summary judgment [dkt. no. 59] is DENIED.  The Clerk of Court shall terminate those motions [dkt. nos. 59, 66], and mark any pending motions denied as moot.

Counsel shall confer and inform the Court by letter no later than September 21, 2015 how they propose to proceed.

SO ORDERED.

Dated:    New York, New York
          September 14, 2015

_Loretta A. Preska_
LORETTA A. PRESKA
Chief United States District Judge